**In the Matter of STERLING–HARRIS FORD, INC., Bankrupt.**

**Leroy SILVERSTEIN and George Harris, Respondents-Appellants,**

v.

**Craig PHELPS, Petitioner-Appellee.**

**Nos. 13757–13758, 13871.**

United States Court of Appeals
Seventh Circuit.

March 15, 1963.

Rehearing Denied April 16, 1963.

Julius Lucius Echeles, Frank W. Oliver, Chicago, Ill., for respondents-appellants.

Burton E. Ericson, John H. Bishop, Chicago, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal involves turnover orders against Leroy Silverstein and George Harris, respondents-appellants. The matter arises out of a bankruptcy proceeding against Sterling-Harris Ford, Inc.

The turnover petition, filed on May 11, 1961, alleged that Sterling-Harris Ford, Inc. was adjudged a bankrupt on March 15, 1961; that at the time the petition for bankruptcy was filed, March 13, 1961, the bankrupt had $25,000 in a commercial bank account, and on that date issued its check for this amount, payable to one Richard E. Korem, who then deposited the check in a bank account maintained by him and his wife; that thereafter on March 15, 1961, Korem delivered to Harris the sum of $7,500 by check, and a similar amount by check to Silverstein; and that the money was the property of the bankrupt estate.

Silverstein answered by admitting he had received the $7,500 check and that a substantial portion of the proceeds was used to redeem payroll checks previously issued to the bankrupt's employees. He refused, however, to testify at the turnover hearing on the basis that his testimony might tend to incriminate him. He further refused to introduce any evidence in response to the petition. Harris likewise refused to testify or to introduce any evidence. His only response to the petition was in the form of "a response" which stated that "if respondent could testify without waiving his right to invoke the protection of the Fifth Amendment to the Constitution" he would deny that he possessed the funds of the bankrupt estate.

In addition to the responses, Silverstein filed a motion for a change of venue from the referee, and Harris, in his response, suggested that the referee disqualify himself. The referee denied the motion and suggestion and on June 14, 1961, issued the turnover order as against Harris followed by a similar turnover order against Silverstein on August 9, 1961.

Respondents filed petitions for review and Judge Robson, in a memorandum opinion affirming the orders of the referee, said:

"This court concludes that there was clear and convincing evidence before the referee to show that the sums alleged were assets of the bankrupt when the bankruptcy petition was filed; that the instant petitioners acquired possession thereof, and that the brief interval of time since they acquired possession, and other evidence in the record, gave rise to the presumption that their possession continued down to the date of the turnover proceedings."

The referee and the district judge used the doctrine of "continued possession" in determining that respondents were yet in possession of the respective sums of money at the time of the turnover proceedings.

After notices of appeal from the orders of the District Court had been filed, the trustee moved for a referee's certificate that respondents had failed to obey the orders. The referee issued the certificate and on June 27, 1962, after each respondent had declined to offer any testimony on his behalf, the district judge entered orders holding both respondents in contempt.

Appeals from the initial turnover orders and the contempt orders were consolidated in this court.

We find no error in the record of the proceedings before the referee or the District Court.

Respondents contend that the referee should have disqualified himself because he had corresponded with agents of the Federal Bureau of Investigation and the United States Attorney in connection with possible violations by respondents of the Bankruptcy Act. They further contend that the referee had persistently ordered Silverstein to answer questions under threat of a contempt citation should he fail to answer. 18 U.S.C. § 3057 provides that any referee having reasonable grounds for believing that violations of the Bankruptcy Act have been committed, shall report to the appropriate United States Attorney all of the facts and circumstances of the case. We also believe it appropriate to note that the referee offered full opportunity for the bankrupt's attorney to attend the conference with the United States Attorney. The referee's refusal to disqualify himself, under the circumstances, was completely proper.

With respect to Silverstein's petition for a change of venue, Section 22, sub. b of the Bankruptcy Act, 11 U.S.C. § 45, sub. b, provides:

"The judge may, at any time, for the convenience of parties or for cause, transfer a case from one referee to another."

In addition to our conclusion that justice did not require the referee to disqualify himself, we believe that the motion for a change of venue should have been directed to the district judge.

We also find no error in the referee's and District Court's application of the rebuttable doctrine of "continued possession." We recognize the words of caution enunciated by the United States Supreme Court in Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), against the precipitate application of this doctrine "merely on proof that at some past time property was in the possession or control of the accused party * * *." (at 65, 68 S.Ct. at 406). But the Supreme Court went on to say that "[u]nder some circumstances it may be permissible, in resolving the unknown from the known, to reach the conclusion of present control from proof of previous possession." We believe such a situation exists in the facts before us.

We are aware of Harris' and Silverstein's heavy reliance on their privilege against self-incrimination. We do not contest their privilege to rely on it but we do not believe they are entitled to use it as a sword permitting them to circumvent Rule 8(d) F.R.Civ.P.,[1] and thereby conceal the whereabouts of money belonging to the trustee in bankruptcy. As was so aptly stated in the recent case of Sahn v. Pagano, 302 F.2d 629 (2nd Cir. 1962):

"Pagano was free to avail himself of the privilege against self-incrimination but—whether or not an inference could be drawn from his doing so in a proceeding of this sort, see 8 Wigmore, Evidence (McNaughton rev. 1961), § 2272, at p. 439 & fn. 14—his claim that testimony would incriminate him cannot be transformed into a plausible assertion of innocence in the acquisition of the monies or an adequate denial of continued possession of them * * *." (citing cases.) (at page 632).

No credible explanation of the whereabouts of the sums belonging to the trustee was made. The orders appealed from are affirmed.

---

1. "Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided."