NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff-Appellee,

v.

Joseph S. BATHALTER, Jr., Defendant-Appellant.

No. 80–2360.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1981.

Decided April 20, 1983.

Marvin J. Rosenblum, Chicago, Ill., for defendant-appellant.

James C. Murray, Jr., Steven M. Rasher, Donald E. Egan, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This case presents the question whether a civil defendant's assertion of his Fifth Amendment privilege against self-incrimination in answer to averments in the plaintiff's complaint may properly be deemed an admission of those averments pursuant to F.R.Civ.P. 8(d).[1] The district court held it could and granted judgment on the pleadings in favor of the plaintiff. We reverse.

### I

Plaintiff National Acceptance Company of America (NAC) is a commercial finance corporation domiciled in Delaware and based in Chicago. Its detailed complaint alleges that defendant Joseph S. Bathalter, a former loan officer of NAC in Chicago,[2] engaged in a large-scale scheme of making loans to companies in which he or two "co-conspirators" had an interest; making loans to non-credit-worthy companies which then bought equipment from, or otherwise transferred loan funds to the controlled ones; and taking direct kickbacks on many of the loans. NAC charges breach of fiduciary

---

1. F.R.Civ.P. 8(b) provides in part:

    A party shall state in short and plain terms his defense to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial.

    F.R.Civ.P. 8(d) provides:

    Effect of Failure to Deny. Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.

2. Jurisdiction is based on diversity of citizenship (28 U.S.C. § 1332) since it is alleged the defendant is an Ohio resident.

duty, fraud and unjust enrichment, and requests damages in the amount of its net losses on the loans—approximately $8.6 million.[3] Defendant Bathalter's answer admitted the complaint's jurisdictional allegations, pleaded lack of knowledge to an allegation describing NAC, and in response to the remaining allegations stated:

> The subject matter of the complaint has been the basis for at least one [grand jury] investigation conducted by the U.S. Attorney for the Northern District of Illinois, Eastern Division. Exercising his rights under the Fifth Amendment to the Constitution of the United States, defendant respectfully declines to answer any of the remaining allegations of the complaint on the ground that his answers might tend to incriminate him. Defendant further respectfully requests that such declination have the same procedural effect under Rule 8(d), F.R.Civ.P., as if he specifically denied said allegations.

NAC moved to strike the answer on the ground it failed to comply with the pleading requirement of F.R.Civ.P. 8(b) and 8(d). Alternatively, NAC moved for judgment on the pleadings on the ground that since Bathalter did not admit, deny, or plead lack of knowledge pursuant to Rule 8(b), the allegations to which he asserted the Fifth Amendment were deemed admitted pursuant to Rule 8(d) leaving no unresolved issues.

The district court, after giving Bathalter time to reconsider his position and file an amended answer (which the defendant declined to do), applied Rule 8(d) and granted NAC's motion for judgment on the pleadings. The court then held a hearing on damages and granted final judgment to NAC in the amount of $8,646,211.83. This appeal followed.

## II

There is no question that the language of Rule 8 requires exactly the result reached by the district court. Unless a defendant is without sufficient knowledge to form a belief as to the truth of an allegation, he is required to admit or deny the averments of the complaint. If he does not deny the averments, they are deemed admitted. Bathalter did not deny the allegations of NAC's complaint, nor (with the one exception mentioned) did he state that he lacked the knowledge or information sufficient to form a belief as to the truth of those allegations. The result would be, under strict application of Rule 8, that the allegations were admitted and that an entry of judgment on the pleadings was the next logical step. The question facing us here is whether the literal language of Rule 8 must give way in order to protect the defendant's constitutional right to avoid self-incrimination.

Though by its terms applicable only in criminal proceedings, the Fifth Amendment privilege against self-incrimination[4] has long been held to extend to compelling answers by parties or witnesses in civil litigation. "[The privilege] applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein*, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924).

Thus, in a civil case, the Fifth Amendment does not privilege from disclosure facts which simply would tend to establish civil liability but does protect wit-

---

**3.** For example, one of many threads in the skein can be traced as follows: Paragraph 7 alleges that Bathalter, without NAC's knowledge, owned or had an interest or business relationship with businesses referred to as Bathalter Entities. Paragraph 15 alleges that Falcon Equipment Co. is a Bathalter Entity. Paragraph 17 alleges that on July 9, 1975 Bathalter caused NAC to make a $300,000 loan to C & M Mining Co. for the purpose of enabling C & M to purchase equipment from Falcon. Paragraph 20 alleges that if NAC had been aware

that Falcon was a Bathalter Entity, it would not have permitted the loan. Paragraph 21 alleges that the loan was dishonest, was a wrongful use by Bathalter of his position, and was a violation of his fiduciary duties. Paragraph 22 alleges that because of nonpayment of the loan, NAC lost $300,000.

**4.** The Fifth Amendment provides in part: "No person ... shall be compelled in any criminal proceeding to be a witness against himself."

nesses from being required to make disclosures, otherwise compellable in the trial court's contempt power, which could incriminate them in a later criminal prosecution. 8 Wigmore on Evidence § 2254 (McNaughton rev. 1961) and discussion therein. Of course, validity of the assertion hinges not on the witness's say so alone: the trial judge must determine whether the witness's silence is justified. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).[5] Still, we have recently held that "it is only when there is but a fanciful possibility of prosecution that a claim of Fifth Amendment privilege is not well taken." *In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 871 (7th Cir.1979). The privilege protects persons against being forced to make incriminating disclosures at any stage of the proceeding if they could not be compelled to make such disclosures as a witness at trial. It therefore applies not only at trial but also at the discovery stage, *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) (answers to interrogatories), *In re Folding Carton, supra* (answers to deposition questions) and to the pleading stage, *In re Sterling Harris Ford, Inc.,* 315 F.2d 277, 279 (7th Cir.), *cert. denied sub nom. Silverstein v. Phelps,* 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 50 (1963). Thus, since NAC did not take issue with the propriety of claiming the privilege, the district court correctly assumed it could not compel Bathalter to respond.

The Fifth Amendment privilege against self-incrimination was deemed incorporated into the Fourteenth Amendment, and thus made applicable against the states, in 1964. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653. In the twelve years following that decision, the Supreme Court addressed the applicability of the privilege in noncriminal matters at least six times. *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967); *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Although none of these decisions involved private parties in a civil lawsuit they nevertheless provide the foundation for our decision here.

*Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), involved an attorney who was disbarred because of his invocation of the Fifth Amendment privilege against self-incrimination at a disciplinary hearing. Its companion case, *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, considered whether a policeman's testimony at a disciplinary proceeding, compelled by the threat of discharge, could be used in a subsequent criminal proceeding. In *Spevack,* the Court noted that the Fifth Amendment secured a privilege "to remain silent unless [the concerned party] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." 385 U.S. at 514,

---

**5.** The substantive validity of Bathalter's privilege assertion is not at issue in this appeal. In his answer, Bathalter asserted that the subject matter of the complaint had already been the basis for at least one federal grand jury investigation. In addition to the possibility of federal prosecution, we note that the complaint's allegations, if true, would also suggest the possibility of liability under Illinois fraud and criminal bribery statutes, Ill.Ann.Stat. ch. 38, § 17–1 § 29A–2 (Smith Hurd) (1977). The allegations of the complaint are such that an affirmative answer to almost any one of them would provide either direct evidence of criminality or "a link in the chain of evidence needed to prosecute." *Malloy v. Hogan,* 378 U.S. 1, 11, 84

S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964) (citing *Hoffman v. United States,* 341 U.S. 479, 486–87, 71 S.Ct. 814, 818–19, 95 L.Ed. 1118 (1951). Accordingly, we agree with the implicit finding of the district court that Bathalter's assertion of the privilege in his answer, though not detailed, was sufficient and valid. We also note, however, that lapse of time may have affected the matter. If statutes of limitation have run so as to bar prosecution of all the charges which Bathalter might otherwise face, he would no longer have a valid claim of privilege. *In re Folding Carton Antitrust Litigation,* 609 F.2d 867, 872 (7th Cir.1979). We leave this possibility for further consideration by the district court.

87 S.Ct. at 628 (quoting *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964)). A "penalty" was described as "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.' " *Id.* 385 U.S. at 515, 87 S.Ct. at 628 (citing *Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106). Disbarment and the accompanying losses were such a costly sanction, and could not be imposed for refusal to produce records and testify. Consistently, in *Garrity,* the Court held that statements elicited as a result of compelling a choice between incrimination and the loss of a job could not be used in a subsequent criminal proceeding.

The holdings of *Spevack* and *Garrity* were reaffirmed in the next two cases, *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), and *Uniformed Sanitation Men Ass'n v. Commissioner,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968). Both cases involved public employees who had been discharged for refusing to waive the privilege when called to testify during official investigations. The Court held the discharges unlawful. In doing so, however, the Court suggested that public employees did not have an absolute right to refuse to answer potentially incriminating questions. The Court noted that the state, in its role as employer, could insist on full disclosure of matters specifically and narrowly related to job performance and could discharge those refusing to disclose. Statements made under this threat would be "immunized" by *Garrity.* The discharges in the cases before it were impermissible only because the state could not act simultaneously as prosecutor as well as employer, i.e. by insisting not only that its employees answer questions but also that those answers be made available for use against them in any subsequent criminal proceeding.

Five years later the Supreme Court again affirmed that the threat of adverse economic consequences cannot be used to compel a waiver of the Fifth Amendment privilege. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), involved two state contractors who refused to sign waivers of immunity when called before a grand jury investigating charges of bribery and larceny in public contracts. Pursuant to state statute both had their existing contracts cancelled and were barred from any further state business for five years. The Court held that this coercion was indistinguishable from the threat of unemployment involved in the *Spevack-Garrity* line of cases and affirmed the district court's holding that the statute was unconstitutional. 414 U.S. at 83, 94 S.Ct. at 325.

The defendant here relies on these five cases in arguing that the judgment appealed from should be set aside. The civil plaintiff is not in a position to offer immunity if the defendant answers the allegations of the complaint. The consequence, in this case, of asserting the constitutional privilege was an 8.6 million dollar judgment entered without trial or the evidentiary showing required for summary judgment. This, says defendant, makes the assertion of the privilege "costly" and thus, constitutionally impermissible. If the effect of a literal reading of Rule 8 is to put the defendant in a constitutionally impermissible situation then the literal reading of Rule 8 must give way.

This is the result reached by the only federal court that has squarely addressed the question. In *De Antonio v. Solomon,* 42 F.R.D. 320 (D.Mass.1967) the plaintiff sued for "wrongful debauchery" of the plaintiff's wife by the defendant. The defendant answered admitting jurisdiction and denying the woman was plaintiff's wife but refusing to respond to the remaining allegations on ground of privilege. The plaintiff moved for default judgment or alternatively for summary judgment, contending that the defendant failed to comply with the pleading requirements of Rule 8. Although the district court originally ruled for the plaintiff, it later reconsidered its decision in light of the intervening Supreme Court rulings in *Spevack* and *Garrity.* In the reconsidered opinion the court held:

Although Rule 8(d), Fed.R.Civ.P., provides that averments in a complaint are admitted when not denied, the defendant's right to assert his privilege against self-incrimination would be considerably watered down if his failure to explicitly deny averments might result in summary judgment against him. Henceforth in these proceedings the defendant's claims of the privilege in his amended answer will be treated as equivalent to specific denials.

42 F.R.D. 320, 322 (citations omitted). *See also, Hughes Tool Co. v. Meier,* 489 F.Supp. 354, 375 (D.Utah 1977).

The result reached by the district court in *De Antonio* and urged on this court by the defendant also has the support of Professors Wright and Miller. In their treatise on civil procedure they conclude:

> [W]hen there has been a proper invocation of the privilege, the Constitution prevents a federal court from imposing any sanction that has the effect of forcing the person invoking the privilege to answer.
>
> . . . .
>
> [T]he court must treat defendant's claim of the privilege as equivalent to a specific denial. This has the dual effect of creating an implied qualification to the language of the first sentence in Rule 8(d) and putting plaintiff to his proof of the matter covered by the "denial."

5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1280 at 360–61 (1969).

The plaintiff here contends that *De Antonio,* which was decided immediately after *Spevack* and *Garrity,* no longer correctly states the law and that *Wright and Miller,* which cites *De Antonio* in support of its conclusion, also fails to reflect the impact of the more recent Supreme Court decisions. The plaintiff points to the distinction made by the Court in *Gardner* and *Sanitation Men* between public employees who are discharged *because* they assert (or refuse to waive) a claim of privilege and those who are discharged not because they claim the privilege but because they refuse to respond to appropriate inquiries. To carry the dis-

tinction through to this case, the plaintiff would assert that the judgment below was entered against the defendant not because he claimed the privilege but because he failed to respond to the allegations of the complaint and was therefore deemed to have admitted them.

The Supreme Court decision coming closest to our present case is *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810, decided in 1976. Palmigiano, an inmate of a Rhode Island prison, was charged in a disciplinary proceeding with inciting a disturbance of prison operations. He had a hearing at which he was told that he had the right to remain silent but that if he did so his silence would be used against him. After the hearing (at which Palmigiano remained silent) he was placed in punitive segregation for thirty days. The Supreme Court rejected a constitutional challenge to the Rhode Island procedure, noting that its

> conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment "does not preclude the inference when the privilege is claimed by a *party to a civil cause.*"

425 U.S. at 318, 96 S.Ct. at 1558. Although Justice Brennan dissented from that portion of the Court's decision (because Palmigiano's punishment resulted at least in part from his assertion of the privilege), he stated,

> In a civil suit involving only private parties, no party brings to the battle the awesome powers of the government, and therefore to permit an adverse inference to be drawn from exercise of the privilege does not implicate the policy considerations underlying the privilege.

425 U.S. at 335, 96 S.Ct. at 1566.

After *Baxter* there is no longer any doubt that at trial a civil defendant's silence may be used against him, even if that silence is an exercise of his constitutional privilege against self-incrimination. Thus, if this case were to go to trial, NAC would be entitled to the benefit of an adverse

inference against Bathalter if he declined to answer a question and invoked his Fifth Amendment privilege, although Baxter does not hold that an adverse finding could properly rest on the silence, without other evidence. The question we must address, is whether this inference is available at the pleading stage. NAC contends that it is so available. We disagree.

In *Baxter,* the majority opinion emphasized that

> a prison inmate in Rhode Island electing to remain silent during his disciplinary hearing, as respondent Palmigiano did here, is not in consequence of his silence automatically found guilty of the infraction with which he has been charged. Under Rhode Island law, disciplinary decisions "must be based on substantial evidence manifested in the record of the disciplinary proceeding." [Citation omitted.] It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the Disciplinary Board. In this respect, this case is very different from the circumstances before the Court in . . . decisions where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the state. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; for, as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege. The advice given inmates by the decisionmakers is merely a realistic reflection of the evidentiary significance of the choice to remain silent.

425 U.S. at 317, 318, 96 S.Ct. at 1557, 1558.

Justice White's emphasis, writing for the majority, makes it very clear that the Court was dealing with a party's silence in the face of adverse evidence, and that *Baxter* does not hold that entering a civil judgment based solely on a defendant's refusal to answer on the ground of self-incrimination is not unconstitutional compulsion.

In a later case, the Supreme Court described its holding as follows:

> Baxter did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, refusal to waive the Fifth Amendment leads automatically and without more to imposition of sanctions.

*Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1 (1977).

In attempting to marshal *Baxter* in support of its position, NAC suggests that its complaint in this case was equivalent to the "evidence" before the Disciplinary Board in *Baxter.* It is true that the evidence offered against Palmigiano consisted, as is often the case in disciplinary proceedings, of official investigative reports.[6] The Supreme Court, however, characterized it as "evidence." A complaint, on the other hand, no matter how detailed, is not evidence. It contains only averments and claims which, unless admitted, must be proved in order to support a judgment.

Thus *Baxter* established that the drawing of an adverse inference from privileged silence in a civil case does not make the exercise of the privilege sufficiently "costly" to amount to compulsion when there is other evidence of the fact. NAC seeks to persuade that it does not make

---

**6.** The prisoner disciplinary report was introduced at the hearing along with an "investigation report" which was described by the Supreme Court as containing "the charges and the primary evidence" against the inmate. There were also supplementary reports. 425 U.S. at 320 n. 4, 96 S.Ct. at 1559 n. 4 (emphasis added).

such silence "costly" to treat it as an admission of an allegation.

The Fifth Circuit also considered *Baxter* as it bears upon the exercise of the privilege against self-incrimination in a civil case. *U.S. v. White,* 589 F.2d 1283, 1286–87 (5th Cir.1979). Keno, a defendant in a criminal case, had testified as a defendant in a civil case, and contended that he had been forced to choose between preserving his Fifth Amendment privilege and losing the civil suit. In rejecting Keno's contention, the court quoted from *Baxter* and said:

> Similarly, there is no indication that invocation of the fifth amendment in this case would have resulted in an adverse judgment. Alside, as plaintiff, was put to the proof of its case ... and there is no indication that under Georgia law silence on the part of defendant would compel a verdict for plaintiff.

Earlier decisions, based on state constitutional doctrine, differed as to whether a civil defendant's invocation of the privilege in a pleading, in lieu of admission or denial, could properly be deemed an admission. *Ridge v. State,* 206 Ala. 349, 89 So. 742, 744 (1921), suggesting that a failure to deny would be an admission, and *People v. Danziger,* 238 Mich. 39, 213 N.W. 448, 452 (1927), "The assertion of a constitutional right should not deprive a party of his day in court."

A pre-*Baxter* decision of this court contained a reference to Rule 8(d). Although the reference might be read to imply that in the circumstances of that proceeding a claim of privilege in a response to a petition could be deemed an admission, we do not view the decision as so holding. It appears that the decision affirmed orders which were based on evidence together with a Fifth Amendment refusal to testify. *In re Sterling-Harris Ford, Inc.,* 315 F.2d 277, 279 (7th Cir.1963), *cert. denied sub nom. Silverstein v. Phelps,* 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 50 (1963). So viewed, the decision is consistent with *Baxter.*

The district court relied on a more recent case decided by the Commonwealth Court of Pennsylvania, *City of Philadelphia v. Kenny,* 28 Pa.Cmwlth. 531, 369 A.2d 1343 (1977), *cert. denied,* 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1978). Without discussing *Baxter,* the court concluded that in the case before it, "a reasonable inference to be drawn from the appellants' assertion of the privilege is that a truthful response to the relevant allegations of the City's complaint would fail to deny these allegations." Accordingly, the allegations were deemed admitted, and judgment on the pleadings held appropriate.

The "cost" to a defendant of treating his claim of privilege in his answer as an admission is at least that plaintiff is excused from presenting proof of his averment and defendant is subjected without more, to an adverse judgment on that issue. We think *Baxter* indicates that this is too great a cost.

There may conceivably be situations where a denial would be truthful, but would tend to incriminate in another context. In such a situation, treatment of the claim of privilege as an admission would clearly impose a substantial cost upon the exercise of the privilege. There may well be situations in which a defense in the nature of confession and avoidance could be truthfully claimed. The confession, however, would be useful to the prosecution in a criminal case, and the defendant could not be certain of success in establishing consent, ratification, or the like, or the defense to the civil claim might be irrelevant as to criminal liability. Treatment of the claim of privilege as an admission would again impose too great a cost. It seems clear that there cannot be a general rule that a claim of privilege as to an allegation is to be treated as an admission of it.

We acknowledge that in the present case it is difficult to analyze the very highly detailed and intertwined allegations and infer anything other than that truthful responses would have been admissions. The possibility that any denial could have been incriminating has not been suggested, and the existence of any "avoidance" defense appears unlikely. It seems, however, to

violate Fifth Amendment principles to call upon the court to determine the cost of invoking the privilege by weighing the inferences in the light of the allegations of a particular complaint.

It is our best judgment, in the light of *Baxter,* that even in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage. We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial.

### III

Inevitably, in civil cases where related criminal charges are involved, tension will arise between plaintiffs' rights to a just and timely adjudication and defendants' rights to refuse to answer under the Fifth Amendment upon a reasonable fear of prosecution. At the least, defendants may not be free to defend the suit as they would like, *cf. U.S. v. White,* 589 F.2d 1283, 1286 (5th Cir.1979), while plaintiffs may be prevented from acquiring evidence helpful, or even necessary, to their case. That tension is not for us to resolve, for it has its sources in the Constitution itself. Nor, in deciding this case, do we make any attempt to set out broad principles which would govern the myriad related, but often even more difficult, questions which arise at other stages of a civil lawsuit.[7] Nevertheless, for the problem before us, *Baxter* draws a bright line. Because a plaintiff may not rest a judgment on a defendant's constitutionally protected silence alone, a valid claim of privilege in response to the allegations of a complaint must not be treated as an admission of those allegations.

The judgment of the district court is vacated and the cause remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

7. *See,* for example, *Comment, Plaintiff as Deponent: Invoking the Fifth Amendment,* 48