**U.S. Steel and Carnegie Pension Fund v. Decatur**

*James T. Carney,* for plaintiff.
*Robert G. DelGreco,* for defendants.

ZELEZNIK, *J.,* March 10, 1986 — This case was argued on plaintiff's motion for partial judgment on the pleadings. On March 10, 1986, the motion was granted, and judgment entered for plaintiff in the amount of $27,980. Defendants have since appealed to the Superior Court of Pennsylvania and this opinion is offered to indicate why that determination was made.

The first count of the complaint alleges that in 1940, one Joseph Rivalsky retired from his employment with the U.S. Steel Corporation after qualifying for a pension, and that plaintiff U.S. Steel and Carnegie Pension Fund commenced to forward monthly pension checks to his home from 1940 through 1983; that this retiree died in December 1967, but that defendants Betty Decatur, his daughter, and Darryl Decatur, his grandson, continued to accept his pension checks until 1983, affixing his name thereon, thereafter endorsing them and cashing or depositing them to their own use.

Paragraphs 8 and 10 of the complaint read:

"(8) From December 1967 through April 1983, defendants received by pension checks payable to Joseph Rivalsky, endorsed the same the name of Joseph Rivalsky, as well as their names, cashed or deposited the same and converted the monies received to their own account.

"(10) The total amount of monies so converted by the defendants is $27,980."

Defendants failed to respond to these paragraphs by denial or admission, and instead responded this way:

"(8) Because an answer to the averments contained within paragraph 8 of plaintiffs' complaint

may tend to incriminate defendants, these defendants decline to answer same, thereby invoking their Fifth Amendment right against self-incrimination.

"(10) Because an answer to the averments contained within paragraph 10 of plaintiffs' complaint may tend to incriminate defendants, these defendants decline to answer same, thereby invoking their Fifth Amendment right against self-incrimination."

At that posture, plaintiff assumed defendants could not oppose a motion for partial judgment on the pleadings on count 1 and so applied to this court. Upon learning that there was opposition, that application was denied by order dated September 5, 1985, and the case placed on the general argument list. On March 10, 1986, after oral argument and consideration of briefs submitted, plaintiff's motion for partial judgment on the pleadings was granted in the amount of $27,980 as claimed in count I. Defendants next requested reconsideration and, after further argument reconsideration was denied on April 18, 1986.

The issue then is whether defendants' invocation of their Fifth Amendment right against self-incrimination in paragraphs 8 and 10 of their answer to corresponding averments of fact in count I of plaintiff's complaint, together with specific admissions to paragraphs 1, 2, 3 and 4, constitute denials or admissions. We ruled them to be admissions.

The Fifth Amendment to the Constitution of the United States provides in part: "No person . . . shall be compelled in any criminal proceeding to be a witness against himself." Although seemingly applicable only to criminal proceedings as drafted, the privilege has unquestionable application to civil proceedings as well, wherever the answer might tend

to subject him who gives it to criminal responsibility. *McCarthy v. Arndstein,* 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed.2d 158 (1924). This privilege has been applied to state proceedings via the 14th Amendment, *Mallay v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, and has been held to apply not only at the trial stage of civil proceedings, but also to pleading and discovery stages. *City of Philadelphia v. Kenny,* 28 Pa. Commw. 531, 369 A.2d 1343, 1347 (1977); *United States of America v. Local 560 of the International Brotherhood of Teamsters, et al.,* 780 F.2d 267 (C.A. 3rd Cir., 1985); *Rogers v. Webster,* 776 F.2d 607 (C.A. 6th Cir., 1985); *National Acceptance Company of America v. Bathalter,* 705 F.2d 924 (C.A. 7th Cir., 1983); *DeAntonio v. Solomon,* 42 F.R.D. 320 (D. Mass., 1967). It operates in civil suits involving private litigants as well as when one of the litigants is a governmental unit.

Having the privilege against self-incrimination available at every stage of any type of court proceeding, the question arises as to the effect of such invocation. The Supreme Court of the United States has held that where sanctions arising out of the invocation make it "costly" to the invoker, the sanctions are constitutionally impermissible. *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977) (state statute calling for immediate dismissal from party office and a five-year ban on holding any other party or public position for failure to waive privilege under certain circumstances held constitutionally impermissible); *Baxter v. Palmigiano,* 428 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (prison inmate's invocation at disciplinary hearing, civil in nature, was insufficient for the disciplinary board to base a finding of guilt for inciting a disturbance upon and impose a punitive segregation of 30 days); *Garrity v. New Jersey,*

385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) (police officer's testimony at disciplinary proceeding, compelled by a choice between incrimination and the loss of his job, held constitutionally impermissible); and *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) (disbarment of attorney following his invocation at a disciplinary hearing held too costly a sanction to be constitutionally permissible).

In *Baxter,* the court held that in a civil action between private parties, a negative inference can be drawn against the invoker at the time of trial. See *Kenny,* supra, 369 A.2d at 1343; *Bathalter,* supra, 705 F.2d at 929-930.

The next question then is whether this inference is also available at the pleading stage under the facts pleaded here. This question was recently addressed by the Commonwealth Court of Pennsylvania and by several federal courts. See *Kenny,* supra; *Local 560,* supra; *Rogers,* supra; *Bathalter,* supra; *DeAntonio,* supra. A literal reading of our Rules of Civil Procedure 1029(b) and the corresponding Federal Rules of Civil Procedure 8(d) would warrant the conclusion that an invocation is an admission since responsive pleadings require specific denials or "no knowledge" denials. Otherwise the averment is deemed admitted. However, appellate court construction of these rules does not permit such a broad conclusion.

The United States Court of Appeals for the 7th Circuit in *National Acceptance Company v. Bathalter,* supra, unanimously held that this negative inference was not available against a plaintiff's averments of breach of fiduciary duty, and fraud and unjust enrichment approximating $8.6 million and denied plaintiff's motion for judgment on the

pleadings. Id. Plaintiff was put to its proof but entitled to a negative inference against the invoking defendant at the time of trial from the fact finder. Id. at 930-31; Accord, *Local 560*, supra; *Rogers*, supra; and *DeAntonio*, supra. In addition, that court would not permit a negative inference to be the sole basis for a judgment against defendant, citing *Baxter*, supra; but ruled that other proof, where coupled with a negative inference, could provide a fact finder with sufficient evidence to render a verdict against the invoking party. That court held that it would be too costly a price to pay at the pleading stage.

The Commonwealth Court of Pennsylvania also decided this issue at the pleading stage in a civil proceeding in *Philadelphia v. Kenny*, supra, and reached an opposite conclusion. Defendants, in a suit for unpaid local wage taxes, were New Jersey residents employed at a federal establishment located within Philadelphia. Defendants invoked their Fifth Amendment rights against the city's allegations listing their income for the tax years in question. The Commonwealth Court agreed with the United States District Court for Massachusetts in *DeAntonio v. Solomon*, supra, that defendant was entitled to assert the privilege in his answer since this allegation called for an answer which may have tended to incriminate him. However, the court distinguished the case before it, holding that a truthful response would fail to deny the allegation:

"In the present case, a reasonable inference to be drawn from appellant's assertion of the privilege is that a truthful response to the relevant allegations of the city's complaint would fail to deny these allegations. (citations omitted). Therefore, we may deem the allegations in paragraphs 2 and 5 of the complaint to be admitted by failure to deny specifically.

or by necessary implication, and, therefore, the assertion leaves no unresolved questions of fact which would render judgment on the pleadings or summary judgment inappropriate." Id. 369 A.2d at ·1343. The Commonwealth Court then affirmed the trial court's grant of the city's motion for judgment on the pleadings.

We are likewise faced with straightforward, easily ascertainable allegations to which defendants invoked their privilege and refused to answer. They admitted that plaintiff forwarded monthly checks in the name of Joseph Rivalsky for 16 years following his death; they do not deny having benefitted personally from this money. No responsive pleadings indicate that consideration was given in return for the monies received or that they were legally entitled to negotiate the checks. Defendants' only denial was a weak response that they had the "impression" that they were somehow entitled to this money. The only reasonable inference to be drawn here is that a truthful response to paragraphs 8 and 10 of count I of plaintiff's complaint would fail to deny these allegations, and support a claim of unjust enrichment.

The *Bathalter* case is distinguishable. There, the allegations in the complaint were complex and unsubstantiated, to which a truthful response might have been made denying such allegations. A criminal prosecution was pending following a grand jury investigation with the threat of imprisonment. The instant case is a civil proceeding where no criminal investigation or prosecution has been commenced nor shown to be imminent.

An examination of the underlying policies of the Fifth Amendment right against self-incrimination reveals the lack of an affront on these policies when the right is asserted in civil litigation between private parties as opposed to criminal proceedings. See

Heidt, "The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases," 91 Yale L.J. 1062 (May 1982). One such policy not implicated by a curtailment of this right in civil cases is that of the protection the right provides against the awesome investigatory powers of government which may elicit coerced confessions and the like from an accused. No such concern exists here. Nor does it exist in a related policy concern of forcing government to prove its case by evidence inherently more reliable than a suspect's confession. The policy most implicated in denying a private-party defendant in a civil action the benefit of this right when the possibility of criminal prosecution still exists is that of forcing the prospective invoker to choose among incrimination, perjury or contempt. The way out is to grant immunity but increase the civil exposure of the invoker, as suggested by Professor Heidt. See 91 Yale L. J. 1062. To deny some type of exposure and cost to the invoker gives an unfair advantage to the invoker at the expense of the other party whom must then prove his case without the benefit of discovery or direct evidence from one who invokes the privilege at every stage of the proceeding. One such increase of civil exposure is that route taken by the Commonwealth Court in *Kenny* and followed here. When it is so obvious that a truthful response would fail to deny the allegation, the invocation of one's privilege will rise to the level of an admission.

Concluding, we did not grant this judgment solely on the adverse inference drawn from failure to deny paragraphs 8 and 10 in count I of the complaint. Plaintiff had undisputable records of pension checks issued for 16 years after the entitled pensioner died in 1967 drawn to the order of Joseph Rivalsky which no one else was entitled to receive. Defendants, a daughter or grandson, admitted

knowledge of his death. They do not allege any consideration given or other satisfactory reason for accepting and processing these checks to their own benefit. There was no reason to prolong the inevitable. If defendants would again invoke their Fifth Amendment rights at trial, plaintiff's proof taken together with defendants' other admissions as well as the negative inference to which plaintiff would be entitled, would compel a nonjury award or a directed verdict for plaintiff. A truthful answer would bring about the same result.

The only other matter raised by defendants was a general statute of limitations defense as set out in their new matter. That defense was not argued at the time of general arguments, and came up for the first time during their argument for reconsideration. Defendants did not identify any specific time limitation. However, their conduct of affixing the pensioner's name on his checks for 16 years caused plaintiff to relax its vigilance and deviate from its right of inquiry, estopping defendants from invoking the bar of that statute.

Hence, the order of March 10, 1986, granting plaintiff's motion for judgment on the pleadings.