James RIDDICK, Jr.

v.

Julius T. CUYLER, et al.

Civ. A. No. 81–0246.

United States District Court,
E. D. Pennsylvania.

Sept. 22, 1981.

Louis Rulli, Terry L. Fromson, Philadelphia, Pa., for plaintiff.

Carl Vaccaro, Deputy Atty. Gen., Philadelphia, Pa., for defendants.

Theodore M. Lieverman, Philadelphia, Pa., for Union defendants.

## BENCH MEMORANDUM AND ORDER[1]

NEWCOMER, District Judge.

Having heard oral argument, considered the briefs and engaged in independent research, the Court concludes that defendants' motions for involuntary dismissal under Federal Rule of Civil Procedure 41(b) should be granted. The Court is prepared now to render its findings of fact and conclusions of law.

### A. FINDINGS OF FACT

1. James Riddick, Jr. (hereinafter "plaintiff") is an adult citizen of the Commonwealth of Pennsylvania, residing at 6628 North Broad Street, Philadelphia, Pennsylvania.

2. Defendant Julius T. Cuyler is Superintendent of the State Correctional Institution at Graterford, Pennsylvania (hereinafter "Graterford").

3. Defendant John A.M. McCarthy was, until October, 1980, Chairman of the Commonwealth of Pennsylvania Civil Service Commission (hereinafter "Civil Service Commission").

4. Mary D. Barnes is currently the Acting Chairperson of the Civil Service Commission.

5. Defendant Council 13, American Federation of State, County and Municipal Employees, AFL–CIO (hereinafter "Council 13") is a labor organization and voluntary unincorporated association, with its principal office in Harrisburg, Pennsylvania.

6. Defendant District Council 88, American Federation of State, County and Municipal Employees, AFL–CIO (hereinafter "District Council 88") is a labor organization and voluntary unincorporated association, and is one of eight subordinate district councils which compose Council 13.

7. Council 13 is certified by the Pennsylvania Labor Relations Board as the exclusive bargaining agent for approximately 70,000 employees of the Commonwealth of Pennsylvania (hereinafter "The Commonwealth"). During the period relevant to this cause of action, Council 13 and the Commonwealth were parties to a collective bargaining agreement effective from July 27, 1976 to June 30, 1978. See Joint Exhibit 1.

8. During his employ by the Commonwealth, plaintiff was a member of a local union affiliated with District Council 88 and Council 13, was within the bargaining unit represented by Council 13, and was covered by the collective bargaining agreement between the Commonwealth and Council 13.

9. Fred Davis was, at all times relevant to this action, a Council Representative with District Council 88, and was responsible for representing Commonwealth employees at Graterford who were in the bargaining unit.

10. Prior to February 26, 1977, plaintiff was employed by the Commonwealth's Bureau of Corrections as a Corrections Officer I at Graterford.

11. On February 26, 1977, plaintiff was discharged from employment by letter dated February 28, 1977. See Joint Exhibit 2.

---

1. This memorandum was read from the bench at the conclusion of plaintiff's case.

12. On November 9, 1977, the Civil Service Commission entered an order and adjudication of plaintiff's appeal. See Joint Exhibit 3.

13. Plaintiff was notified to report for duty as Corrections Officer I, regular status, at Graterford, on November 28, 1977 at 6:00 a. m. See Joint Exhibit 4.

14. Plaintiff appeared at Graterford on November 28, 1977, at approximately 6:00 a. m.

15. On November 28, 1977, plaintiff informed Robert H. Spaid, Major of the Guards, that he was not fit to return to duty. See Joint Exhibit 5.

16. On November 28, 1977, defendant Cuyler notified plaintiff, in writing, to report for duty on December 2, 1977. See Joint Exhibit 6.

17. By letter dated January 10, 1978, defendant Cuyler notified plaintiff that he was terminated from his employment effective at the close of business December 2, 1977. See Joint Exhibit 7.

18. The letter of termination was accompanied by a notification of rights entitled "Extracts from the Civil Service Act." See Joint Exhibit 8.

19. Arbitration hearings were held by the Arbitrator on October 13, 1978, and January 3, 1979.

20. On January 22, 1979, Arbitrator Rosenberry issued his opinion and award, ruling that plaintiff's grievance was not arbitrable by virtue of Article XXXIX, Section 1 of the collective bargaining agreement. See Joint Exhibit 9.

21. By letter dated February 13, 1979, Attorney Walters requested the Civil Service Commission to accept an appeal nunc pro tunc on behalf of plaintiff. See Joint Exhibit 10.

22. On March 13, 1979, the Civil Service Commission entered an order declining to grant the request for a hearing as untimely. See Joint Exhibit 11.

All of the foregoing findings of fact were the result of a stipulation entered into between the parties. See Joint Exhibit 12.

In addition, the Court finds the following facts:

23. The Civil Service Commission, by order dated 11/9/77, returned plaintiff to the status of a regular Commonwealth employee on leave without pay status and ordered that he be given 10 days notice that his leave of absence was terminated and that he must report for work as ordered or suffer the loss of his employment.

24. Defendant Cuyler gave plaintiff notice in compliance with the Civil Service Commission's order by letter dated November 15, 1977.

25. Plaintiff did not "report for work" on November 28, 1977, within the meaning of the Civil Service Commission's November 9, 1977 order or Defendant Cuyler's November 15, 1977 letter.

26. Plaintiff was given a second chance to report to work and retain his job on December 2, 1977. Plaintiff did not so appear.

27. Plaintiff was terminated from his employment at Graterford effective December 2, 1977.

28. Plaintiff was aware of his right to appeal his termination to the Civil Service Commission or to file a grievance through the Union, and was familiar with the provision of the collective bargaining agreement which required him to elect between these two methods of challenging his termination.[2]

2. Article XXXIX, Section 1 of the Agreement states as follows:

A civil service employee may process his/her grievance through either the civil service appeal procedure or the contract grievance procedure. If an appeal is filed under the Civil Service appeal procedure while proceedings are taking place under the contract grievance procedure, then the contract grievance procedure shall cease and shall not be permitted to be reinstituted. If an appeal is filed under the Civil Service appeal procedure, the employee shall not be entitled to institute proceedings under the contract grievance procedure, all rights to do so being waived by the exercise of an option by the employee to utilize the Civil Service procedure.

29. Plaintiff or his legal agent, Helen Miller, sent or instructed another to send a mailgram, dated January 25, 1978, to the Pennsylvania Civil Service Commission, initiating an appeal of his termination.

30. Plaintiff or his legal agent, Helen Miller, subsequently withdrew the appeal with the Civil Service Commission and did not re-submit a timely appeal.

31. Plaintiff or his legal agent, Helen Miller, initiated a Union grievance procedure through Union representative Fred Davis.

32. The Union actively supported Plaintiff in his attempts to arbitrate his grievance.

33. In finding plaintiff's grievance non-arbitrable, the arbitrator relied on his factual conclusion that plaintiff or his legal agent sent the mailgram to the Civil Service Commission, initiating plaintiff's appeal in that forum.

## B.  CONCLUSIONS OF LAW

This is an action brought pursuant to 42 U.S.C. § 1983 by a former corrections officer at the State Correctional Institution at Graterford, Pennsylvania (hereinafter, "Graterford"). Mr. Riddick alleges that his discharge from employment at Graterford, effective December 2, 1977, was in violation of rights secured to him by the Due Process Clause of the 14th Amendment of the Federal Constitution. Specifically, plaintiff argues that he was denied his rights to pre-termination notice and a pre-termination hearing on the merits of the grounds for his discharge. Alternatively, plaintiff argues that he was denied his right to a post-termination hearing.

For the reasons discussed below, this Court holds that: (1) plaintiff received adequate advance notice of his termination and the reason therefore; (2) plaintiff was not entitled to a pre-termination hearing; (3) plaintiff waived his right to a post-termination hearing before the Civil Service Commission by withdrawing the appeal filed in his name; (4) the filing by plaintiff, or by one authorized to act on his behalf, of an appeal with the Civil Service Commission waived plaintiff's right to challenge his discharge through the contract grievance procedure; and (5) the provision of the collective bargaining agreement between defendants Council 13 and the Commonwealth, which made filing of an appeal with the Civil Service Commission an automatic waiver of rights to challenge employment decisions through the contract grievance procedure, was not constitutionally defective.

A necessary preliminary question in any action challenging a state employment decision under the Due Process Clause is whether the plaintiff-employee had a "property interest" in his job so as to entitle him to invoke the constitutional injunction against the taking of property without due process of law. The question whether a property right exists depends on whether the state or local laws and any express or implied contracts governing the employment relationship give the employee an expectation of continued employment. *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

The Pennsylvania Civil Service Act provides that, "[n]o regular employee in the classified service shall be removed except for just cause." Pa.Stat.Ann. tit. 71, § 741.-807 (1981). The collective bargaining agreement governing plaintiff's employment at Graterford contained a similar just cause provision. Although plaintiff was on leave of absence without pay prior to his dismissal, he was a "regular employee" within the meaning of the Civil Service Act and the contract and was entitled to the protection of these just cause provisions. Accordingly, this Court holds that plaintiff had a property interest in his job with Graterford, and that he was deprived of that interest when he was discharged from employment.

Having established that plaintiff is entitled to invoke the Due Process Clause, the Court must determine precisely what sort of process the clause guarantees to one in plaintiff's position. Plaintiff's first contention is that he was entitled to advance

notice of his termination and the reasons therefor, and that defendant Cuyler's January 10, 1978 letter constituted an impermissible retroactive termination of his employment.

■ This Court cannot agree that plaintiff did not receive advance notice of his termination. He was informed, by letter dated November 15, 1977, that his employment would be terminated for abandonment of position if he failed to report for work on November 28, 1977. This letter complied with the requirements of the Civil Service Commission's November 9, 1977, order and adjudication of plaintiff's appeal from his earlier termination and constituted valid prior conditional notice of termination for abandonment of position.[3] Because plaintiff did not report for work on November 28, 1977, Graterford was entitled, as a procedural matter, to terminate his employment for abandonment of position in accordance with the terms of the November 15 letter. The fact that Graterford chose to give plaintiff a second chance to report to work and retain his job, on December 2, 1977, and made December 2, rather than November 28, the effective date of his termination, does not affect the constitutional adequacy of the November 15 letter as notice of termination.

■ Similarly, the November 15 letter was adequate pre-termination notice of the *reason* for plaintiff's discharge. Simply stated, that letter put plaintiff on notice that if he did not report to work on November 28, 1977, his employment status would be terminated for abandonment of position.

Plaintiff's next contention is that the Commonwealth unconstitutionally denied him a pre-termination hearing on the grounds for his discharge. No hearing prior to termination for abandonment of position is required either by the Civil Service Act or by the collective bargaining agreement. Plaintiff nevertheless argues that

the content of procedural due process guarantees is a matter of federal constitutional law and cannot be determined solely by reference to the procedures voluntarily provided by the government employer or bargained for by the public employees' union.

The Court notes preliminarily that it is by no means clear, in light of the Supreme Court's opinions in *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), and *Bishop v. Wood, supra*, that public employees can claim, as a matter of federal constitutional law greater procedural protections than those provided by statute and contract. However, as the Court believes that even under plaintiff's view of the law he was not entitled to a pre-termination hearing, the Court will proceed with the legal analysis plaintiff suggests is appropriate. Plaintiff urges the Court to determine whether he was entitled to a pre-termination hearing according to the test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). This test requires the Court to balance the private interest affected by official action; the risk that the absence of a given procedural safeguard will substantially increase the chances of a wrongful deprivation of such an interest; and the burden on the governmental entity of providing the safeguard in question.

■ Of crucial importance in this case is the fact that plaintiff was on leave without pay prior to his termination and that he claimed to be unfit to return to active duty at that time. This is not a case of an active employee deprived of his income by discharge from employment, or that of an employee on leave without pay who is fired when he attempts to return to work. The private interest affected by official action in this case is comparatively minor: namely, Mr. Riddick's interest in prolonging his leave of absence without pay, so that he might at some indefinite future date return to his job at Graterford without having to

---

**3.** The regulations implementing the Civil Service Act only require notice of termination for abandonment of a position within ten days *after* the effective date of such termination. 4 Pa.Code § 101.53 (1977). In this case, plaintiff received *prior* notice, and therefore he may not complain that subsequent written confirmation of his termination came more than ten days after the effective date thereof.

reapply through Civil Service channels. A reasonably prompt post-termination hearing would ordinarily be entirely adequate to redress wrongful deprivations of such a right. If the fact-finder at such a hearing were to conclude that the employee had been entitled to remain on leave of absence the employee could simply be returned to that status. In the meantime, the employee would presumably not have suffered deprivation of income which he expected to receive. This Court can find no justification for imposing the burden of providing a pre-termination hearing on Graterford when it terminates an employee following expiration of a leave of absence without pay for failure to report to work.

Plaintiff's final challenge to the procedures followed in terminating his employment concerns his failure to obtain a post-termination hearing on the merits of his claim. In fact, the arbitration hearings held on October 13, 1978, and January 3, 1979, did encompass the merits of Mr. Riddick's claim that his discharge was not justified, but the arbitrator held following these hearings that plaintiff's grievance was not arbitrable under the contract, due to the filing of an appeal in his name with the Civil Service Commission. The arbitrator specifically found that the mailgram initiating the Civil Service Commission appeal was sent either by plaintiff himself or by one acting as his legal agent. In reaching an identical conclusion, this Court gives appropriate weight to the arbitrator's finding. Moreover, the arbitrator reported that plaintiff testified at the arbitration hearing that his agent, Helen Miller, sent the disputed mailgram. In the trial of this action, plaintiff stated under oath that the arbitrator was "lying" in so reporting his testimony at the arbitration hearing. The Court does not credit plaintiff's testimony that his brother, who died in 1978, sent the mailgram, rather than Helen Miller.

Given that the filing of the Civil Service appeal was binding on plaintiff, it is clear from the language of the Union contract that the filing of this appeal made plaintiff's Union grievance non-arbitrable, as found by the arbitrator. It is equally clear, from plaintiff's own testimony, that he intentionally withdrew the Civil Service appeal filed in his name, and did not re-file it in a timely fashion, thereby waiving his right to proceed in that forum. Plaintiff apparently did this in a mistaken belief that his grievance was still arbitrable and that he would eventually receive a hearing and adjudication on the merits of his grievance from an arbitrator.

Plaintiff was caught in a "Catch-22" situation. Although it is unfortunate that he unintentionally waived his rights to any determination on the merits of his discharge, we are constrained to hold that this does not, in and of itself, mean that plaintiff was denied due process of law. Plaintiff had notice from the language of the contract, with which he was familiar, that the filing of a Civil Service appeal would terminate his right to process his grievance through the union, and he is bound by his own act or that of his agent in filing such an appeal. The Court is unable to discern any convincing distinction between this case and that of *Abbruzzese v. Berzak*, 601 F.2d 107 (3d Cir. 1979). That case involved an identical Union contract provision and also concerned an employee who unintentionally waived his right to a full hearing on the merits of his claim in either forum by relying on a mistaken view of the legal effect of his actions. The Third Circuit Court of Appeals held that the plaintiff's failure to obtain any hearing on the merits of his claim did not amount to a Due Process violation, and that Due Process guaranteed him only the right to obtain a hearing if he correctly followed the ordained procedures.

Consistent with this memorandum, an appropriate order will be entered today granting defendants' motions under Rule 41 for involuntary dismissal.