Edward B. **PORTNOY**, Plaintiff,

v.

Daniel W. **PENNICK**, Ralph O. Barnett, Mario Mele, John T. Hale, and Robert J. Israel, Defendants.

Civ. A. No. 84–0573.

United States District Court, M.D. Pennsylvania.

Oct. 17, 1984.

Edward S. Finkelstein, Harrisburg, Pa., for plaintiff.

John G. Knorr, Daniel R. Schuckers, Deputy Attys. Gen., Harrisburg, Pa., for Pennick, Barnett, Mele, Israel.

Bruce H. Bikin, Asst. Counsel, Liquor Control Bd., Harrisburg, Pa., for John T. Hale only.

## MEMORANDUM

HERMAN, District Judge.

## I. BACKGROUND

On April 24, 1984, Plaintiff initiated this action by filing a complaint. The Defendants, on May 25, 1984, filed a motion to dismiss. The motion has been fully briefed and is now ripe for our consideration.

The Plaintiff is a former investigator for the Pennsylvania Liquor Control Board ("LCB"). He was an Assistant Supervisor of Investigations in the LCB's Philadelphia District. On May 11, 1983, he was called to testify before the Pennsylvania Senate Law and Justice Committee, which was investigating possible misconduct by LCB employees. On advice of counsel, Plaintiff asserted his Fifth Amendment privilege against self-incrimination and declined to answer any questions relating to his official duties.

On May 26, 1983, Plaintiff was suspended from his duties by the LCB. He then fully cooperated with an internal LCB investigation concerning his conduct. That investigation disclosed no misconduct by the Plaintiff. Consequently, Plaintiff was later reinstated by the LCB.

In December of 1983, Plaintiff was notified that he was being transferred to the Allentown District, effective January 19, 1984. Then, in January, 1984, Plaintiff was transferred to the Punxsutawney District. Plaintiff alleges that these transfers were ordered in retaliation for Plaintiff's exercising his constitutionally-protected right against self-incrimination. Plaintiff, rather than accepting the transfers, resigned, effective February 24, 1984. He filed a complaint, with this court, in April of 1984, seeking compensatory and punitive damages, injunctive relief, costs, and attorney's fees. The Defendants' motion to dismiss was filed in May, 1984, and raised numerous grounds justifying dismissal of this action.

■ On a motion to dismiss, we must accept all of the allegations of a complaint as being true, and must construe the complaint liberally in the light most favorable to Plaintiff. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *Robb v. City of Philadelphia*, No. 83–1578, slip op., at 7 (3d Cir. May 7, 1984); *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir.1977).

## II. DISCUSSION

### A. *Plaintiff's Right To Remain Silent*

The threshold issue to be addressed here is: did the Defendants violate the Plaintiff's constitutional rights by disciplining him for exercising his Fifth Amend-

ment right against self-incrimination? Since we are considering a motion to dismiss, we will presume Plaintiff's assertions to be true and accurate. Therefore we will presume that Plaintiff can prove that the Defendants did indeed transfer him in retaliation for Plaintiff's asserting his Fifth Amendment rights. We will further presume that the transfer can be shown to be disciplinary in nature.

Initially, we recognize that the issue presented is neither novel nor unaddressed by the United States Supreme Court. The Supreme Court, on several occasions, has had opportunities to review, and rule on, cases with substantially the same facts and issues as are presented here. *See Lefkowitz v. Cunningham*, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Assoc., Inc. v. Comm'r of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

The parties apparently agree that these Supreme Court cases are relevant to the case at hand. The parties disagree, however, on the impact of the decisions on this case. Plaintiff believes that they show that he cannot be disciplined for the exercise of his Fifth Amendment rights, while Defendants argue that the cases allow an employee to be disciplined. We believe that Defendants are correct in this respect, but that the Supreme Court has established safeguards to protect individuals' exercise of their constitutional rights.

 Under the analysis developed by the Supreme Court in the relevant decisions, an employee may properly be discharged or disciplined for refusal to answer pertinent questions concerning his official conduct. *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). However, such discharge is not allowed when the employee is forced to decide be-

tween his job and his right to refuse to answer questions which could subject him to legal sanctions. *Garrity v. New Jersey*, 385 U.S. 493, 495, 87 S.Ct. 616, 617, 17 L.Ed.2d 562 (1967). The state could not act as both employer and as prosecutor. *National Acceptance Co. Of America v. Bathalter*, 705 F.2d 924, 928 (7th Cir.1983). Instead, the state/employer must "immunize" the employee; *i.e.*, not make the answers available for subsequent state criminal prosecution. Only then could the employer require the employee to disclose information, or subject the employee to disciplinary action for refusal to answer. *Id.* Therefore, Plaintiff here could only be disciplined or discharged by his employer, the LCB, if, prior to questioning, Plaintiff was assured that any answers given by him to the senate committee would be used solely in determining his status within the LCB, and that such responses would not be used against him in a criminal proceeding. Any alternative approach would have forced the Plaintiff to choose between his job and a right guaranteed him by the Constitution.

 Additionally, we recognize that Plaintiff, as an enforcement officer, is entitled to no less protection under the Constitution, than other citizens. "[P]olicemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights." *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). Therefore, even though the community, and commonwealth, may have an interest in maintaining an image of integrity and excellence in its enforcement organizations, such an image may not be maintained through the degradation of an individual's constitutional rights.

 Here, Plaintiff was subpoenaed to testify before a government body investigating wrongdoing within the LCB. No evidence has been offered by Defendants that this investigating body, or the LCB, offered any guarantees to Plaintiff that his responses would not be used against him in any potential criminal proceedings against him. Indeed, the purpose of the investiga-

tion appears likely to have been to investigate the possibility of criminal charges against LCB employees. The transcript of the hearing indicates that, at that time, an investigation into allegations of wrongdoing by Plaintiff and others was already being conducted by the state Attorney General's office. *Tr. of Law and Justice Committee Public Hearing of May 11, 1983*, at 52. Any testimony offered at the hearing would most likely have been forwarded to the Attorney General. Senator Greenleaf even requested that the LCB forward any information obtained through the LCB's internal investigation to the Attorney General's office.[1]

These factors, combined with the fact that the hearing was conducted publicly, clearly indicate that any statements given by Plaintiff could have been used against him in a subsequent criminal proceeding. Absent any indication of assurances of immunity being offered, we believe that his exercise of his right to remain silent was proper and that any punishment for such exercise was prohibited. His claim that he was so disciplined cannot, therefore, be dismissed for failure to state a claim upon which relief can be granted.

### B. Immunity of Defendants

■ The Defendants assert a qualified, or "good faith" immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That case established that a Plaintiff, to overcome an assertion of immunity, must set forth more than "bare allegations of malice." *Id.*, at 817, 102 S.Ct. at 2738. Additionally, the Supreme Court pointed out that the qualified immunity granted officials who perform discretionary functions can be avoided only if the officials act contrary to clearly established statutory or constitutional law of which a reasonable person would have known. *Id.*, at 818, 102 S.Ct. at 2738.

The Plaintiff has responded to Defendants' arguments by, initially, pointing out that qualified immunity is an affirmative defense which must be raised by the Defendants and need not be overcome by allegations in the complaint. We agree and will consider the merits of Defendants' arguments in light of Plaintiff's opposition brief.

The Plaintiff argues that 1) the law is quite clear with respect to Plaintiff's right to exercise his Fifth Amendment right against self-incrimination when he reasonably believes that the testimony may be used against him in a subsequent criminal proceeding; and 2) the Defendants were informed by their counsel of the law prior to suspending Plaintiff. We must agree with Plaintiff that the law with respect to disciplining an employee has a long history, and is not a novel issue. Even though the law is constantly being refined and adjusted, the basic principle has remained intact: that an employer may not penalize a non-immunized refusal to answer potentially incriminating questions.

With respect to the Defendants' knowledge of the law, we believe that the affidavit submitted by John Reiley (Exhibit "A" to *Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss*) raises a sufficient question regarding the knowledge of the Defendants for the Plaintiff to survive a motion to dismiss. The affidavit clearly indicates that counsel to the LCB warned Defendants prior to their disciplining of Plaintiff that Plaintiff could not be disciplined for exercising his Fifth Amendment rights. The conveyance of this accurate statement of the law to the Defendants removed any doubt regarding their ignorance of the law. They cannot now plead confusion. Defendants' motion to dismiss on this ground will be denied.

### C. Count II Property Interest

Defendants assert that Plaintiff's Count II, alleging conduct which "clearly adverse-

---

**1.** Senator Greenleaf stated to an LCB official: "It would seem to me that it would be incumbent upon you to conduct your own internal investigation. Fine. I think you should forward the information to the Attorney General's office whenever there's suspected criminal activity." *Tr.*, at 53.

ly affected Plaintiff's property right in his employment," *Plaintiff's Brief in Opposition to Motion to Dismiss*, at 18, should be dismissed. They argue first that no action taken by Defendants adversely affected Plaintiff's property right. In particular, Defendants allege that Plaintiff had no property interest in employment as an assistant supervisor for the LCB. *Reply Brief*, at 1. Plaintiff responds by arguing that 1) his suspension and 2) his transfer to Punxsutawney, were each deprivations of his property rights.

Property interests arise out of state, and not federal, law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[2] Therefore, any interest Plaintiff may have with respect to continued employment with the LCB must be found in Pennsylvania law. Under Pennsylvania statutory law, an employee of the LCB may be removed or suspended only for "just cause." 71 P.S. §§ 741.803 and 741.807. A "just cause" statute has been interpreted by federal courts sitting in Pennsylvania, and elsewhere, to "imply a right not to suffer from governmental action without due process guarantees." *Bagby v. Beal*, 439 F.Supp. 1257, 1260 (M.D.Pa.1977). *See also Thurston v. Dekle*, 531 F.2d 1264 (5th Cir.1976); *Riddick v. Cuyler*, 523 F.Supp. 258 (E.D. Pa.1981). We, therefore, agree with Plaintiff that he had a right not to be suspended or removed, except for "just cause."

Additionally, 71 P.S. § 741.803 provides that any disciplinary suspension "shall not exceed in the aggregate thirty working days in one calendar year," and that a copy of a report as to the reason(s) for suspension shall be given to the suspended employee. 71 P.S. § 741.803. These provisions clearly and unequivocally grant an employee additional rights.

Defendants' argument that they are entitled to qualified immunity because the recent Pennsylvania Supreme Court decision in *Sterling v. Commonwealth*, 504 Pa. 7, 470 A.2d 101 (1983), creates an ambiguity as to the property rights created by Pennsylvania, is without merit. In that decision, the Supreme Court observed that no per se property interest in public employment exists, but that the legislature must define such rights. Here, the legislature has unambiguously spoken through statutes and has affirmatively set forth certain rights possessed by Pennsylvania government employees. The clarity of the sections at issue are not in dispute and we do not believe that the Defendants could have, based upon the *Sterling* decision, questioned the sections' applicability. They are not, therefore, entitled to qualified immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396.

Our determination that the Plaintiff possessed certain property interests under Pennsylvania law does not completely resolve the issue. The Defendants have also argued that, even if Plaintiff did possess property rights, none were improperly taken through the Defendants' conduct. To resolve this issue, we must examine each of the incidents in which Plaintiff has alleged that his property interests were infringed upon by Defendants.

### 1. Suspension

■ Plaintiff's suspension lasted approximately two months. At its end, Plaintiff was reinstated with full back pay. Defendants argue that this payment of wages remedied any deprivation caused by the suspension. We cannot agree. An initial issue raised by Defendant is whether the suspension was for good cause. If it was, and a suspension during the pendency of an investigation is allowed if good cause exists to justify an investigation, *Jacobs v. Dept. of Public Welfare*, 32 Pa.Commw.Ct. 101, 104, 377 A.2d 1289, 1291 (1977), then § 741.803 is applicable. If the suspension

---

**2.** "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

was not for good cause, but occurred for the purpose of disciplining Plaintiff for exercising his Fifth Amendment rights, then a constitutional violation has occurred.[3]

Even if the suspension was for good cause, however, Plaintiff's claim for violations of due process may survive. Plaintiff states that he was never notified of the reason for his suspension. This is in clear violation of the procedural requirement of § 741.803. Additionally, Plaintiff was suspended for more than thirty consecutive days in one year, again in clear violation of § 741.803. We believe that the thirty-day limitation provided Plaintiff with the legitimate expectation that he would not be suspended for a longer length of time. Such an expectation was intruded upon by Defendants apparently without due process of any type. The lack of notice clearly violates any contemporary standards with respect to due process requirements.

These violations of state law, if proven, amount to a taking of a property interest without due process of law. The subsequent payment of back wages cannot negate what had already occurred. The violation had already taken place and an appropriate remedy may or may not be limited to back wages. Regardless, we do not believe Plaintiff's claim under Count II, for his suspension, should be dismissed.

### 2. Transfer

■ The Plaintiff's second claim with respect to a property deprivation without due process of law concerns Plaintiff's transfer away from the Philadelphia District. The Defendants argue that this claim should be dismissed since Plaintiff possessed no property interest in remaining in the Philadelphia District.

On this issue, we must agree with Defendants. Plaintiff has alleged no property

interest in remaining with the Philadelphia District. As stated above, a property interest must be created by the state, and not by the federal courts. Here, Plaintiff has offered no evidence that he had a right to work solely in the Philadelphia District.[4] Absent such a right, no deprivation could have occurred when Plaintiff was transferred, at the same pay level, to Allentown, and then to Punxsutawney. Consequently, no due process was required prior to the transfer. This claim must be dismissed.[5]

### D. Count III Liberty Interest

■ Plaintiff has also alleged a deprivation of a liberty interest under the Fourteenth Amendment. He states that the Defendants improperly inflicted a stigma upon him and impugned his honesty, integrity, and competence. *Paragraph 22 of Plaintiff's Complaint.* He further alleges that this stigma, combined with his being disciplined, served to deprive him of a protected liberty interest. Plaintiff also argues that as a consequence of the Defendants' conduct, Plaintiff is unable to obtain comparable employment.

On this issue, we cannot agree with the Plaintiff. Although Plaintiff may have been disciplined through suspension, his reinstatement with full back pay served to restore any possible "change in legal status." This reinstatement provided Plaintiff with a full remedy for any possible deprivation alleged under this count. As such, we find that no protected liberty interest of Plaintiff resulted from his suspension.

Additionally, the transfer of Plaintiff to Punxsutawney, even if it were disciplinary in nature, does not constitute a change in legal status. *Hughes v. Whitmer*, 714 F.2d 1407, 1414 (8th Cir.1983). We have stated above that Plaintiff enjoyed no protected

---

**3.** The back pay, while serving as a mitigating factor in an award of damages, does not close the issue. Plaintiff would be free to argue for additional applicable compensatory and/or punitive damages.

**4.** A common practice not to transfer employees further than one district from prior employ-

ment is insufficient to establish a definite property right in not being transferred.

**5.** This determination, however, does not relate to Count I, in which Plaintiff alleges that the transfer was in retaliation for his exercise of his constitutional right. That count, in itself, is not being specifically challenged by Defendants.

right to employment in the Philadelphia District or in any neighboring District. Absent such a right, a transfer without pay or rank reduction, does not constitute a change in legal status, or a loss of government employment. Absent such harm, Plaintiff cannot recover under this claim. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

We, therefore, find that Plaintiff cannot recover under his claim for violation of a liberty interest without due process of law. This claim is clearly inappropriate to Plaintiff's cause of action. The Defendants motion to dismiss this claim will be granted.

### E. Count IV: Plaintiff's Pendent Defamation Claim

█ In Count IV of his Complaint, Plaintiff alleges that the Defendants defamed him by releasing false and defamatory information about Plaintiff. The Defendants now argue that this claim is brought under state law, and that it is actually directed against the Commonwealth. If so, the claim must be dismissed pursuant to the recent Supreme Court decision in *Pennhurst State School And Hospital v. Halderman,* — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In *Pennhurst,* the Supreme Court ruled that a Plaintiff could not sue a state in federal court to enforce a state law. While that particular case involved injunctive relief, it is clear that a Plaintiff cannot obtain damages against a state in federal court, under either a federal or state claim. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1971). Additionally, the Eleventh Amendment further bars any actions in federal court directly against a state for injunctive relief. *Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

Historically, however, Plaintiffs have been able to obtain injunctive relief against states by suing under a fiction first recognized in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Such actions are brought against a state official to enforce a federal constitutional law. *Edelman,* 415 U.S. at 664, 94 S.Ct. at 1356.

Even then, however, when the relief sought indicates that "the state is the real, substantial party in interest," *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), then the Eleventh Amendment bars even that action. *Pennhurst,* 104 S.Ct. at 908; *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963) (per curiam); *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). *Pennhurst* has clarified this approach by concluding that "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when—as here—the relief sought and ordered has an impact directly on the State itself." *Id.,* 104 S.Ct. at 917.

Here, Defendants argue that *Pennhurst* is specifically applicable to this case since the Plaintiff, in his Complaint, has alleged that the Defendants acted within their official capacity. Any relief would have to come from the state. Plaintiff disagrees and argues that he is suing the Defendants only in their individual capacity. Hence, the state is not involved. On this point, we agree with Plaintiff. His Complaint, while ambiguous, can be interpreted to allege claims against the Defendants in both their individual and official capacities. As such, we further believe that a defamation claim against the Defendants in their official capacity would be equivalent to a suit against the state under state law. That claim must, pursuant to *Pennhurst,* be dismissed. On the other hand, allegations that the Defendants acted in their individual capacities does not involve the state. That claim seeks no damages or injunctive relief from the state. It is merely a pendent defamation claim against three individuals who happen to be employed by the state. We will allow Plaintiff to proceed on this claim against the Defendants only to the degree it alleges conduct committed in their individual capacities.

### F. Eleventh Amendment Immunity of Defendants

█ As stated-above, individuals may not be sued for damages in federal court

when the real party in interest is the state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Similarly, "an award of *retroactive* monetary damages or back pay against the officials in their *official* capacity is barred because it necessarily would be paid from the state treasury." *Helfrich v. Commonwealth of Pennsylvania,* 660 F.2d 88, 90 (3d Cir.1981) (emphasis in original text). *See also Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Skehan v. Board of Trustees,* 590 F.2d 470, 485–91 (3d Cir. 1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *West v. Keve,* 571 F.2d 158 (3d Cir.1978). Consequently, any claim presented here for monetary relief against the Defendants in their official capacity must and will be dismissed.

■ The Plaintiff, however, argues that his claims are against the Defendants in their individual capacities.[6] The distinction between individual and official capacities is often ambiguous or blurred. In *Pennhurst,* the Supreme Court offered a lengthy discussion of different approaches to the difficulty of distinguishing the two concepts. What has apparently emerged is the view that an individual state official may be sued for damages if the relief would not be paid from the state treasury; if the official acted beyond the sphere of his official responsibilities, if the official violated federal law; and, if he did not act in good faith.

Here, the Plaintiff alleges that the Defendants acted improperly in suspending and then transferring Plaintiff. While this appears to the court to be acts which occurred within the official duties of the Defendants, we can perceive of evidence and testimony being admitted to show that the Defendants acted in bad faith and beyond their authority.

■ In particular, the Defendants' knowledge of the law, as set forth in case and statutory form, is relevant. *Pennhurst* made clear the view that an individual is not personally liable for a wrong decision, if the official was empowered to make the decision. *Pennhurst,* 104 S.Ct. at 918, n. 22. However, when that official is clearly aware that his decision is wrong, but proceeds to so decide, he cannot then hide behind his official status. While it is incorrect to assert that "an officer given the power to make decisions is only given the power to make correct decisions," *Larson v. Domestic And Foreign Commerce Corp.,* 337 U.S. 682, 695, 69 S.Ct. 1457, 1464, 93 L.Ed. 1628 (1949), it is also incorrect to assert that an official with the power to decide is free to consciously disregard the correct decision. Plaintiff is, here, free to submit evidence that Defendants were informed of the law prior to their decision-making, and that they then proceeded to ignore the law. If Plaintiff does indeed prove such facts, he will have shown that the Defendants acted ultra vires and in their individual, as opposed to official capacities. Dismissal of such a claim is not appropriate at this time.

### G. Pennsylvania's Statute of Limitations

■ The Defendants have raised the defense of the applicable statute of limitations. They argue that Pennsylvania's law providing a six-month statute of limitations for actions against public officials is applicable under 42 Pa.C.S. § 5522(b). However, the recent Third Circuit decisions in *Fitzgerald v. Larson,* 741 F.2d 32 (3d Cir. 1984), and *Knoll v. Springfield Township School District,* 699 F.2d 137 (3d Cir.1983) make it clear that the applicable statute of limitations here is Pennsylvania's omnibus

---

6. In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) the court states that "*Ex Parte Young* teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he

'comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative char-

acter and is subjected *in his person* to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.'"

*Scheuer,* at 237, 94 S.Ct. at 1687, *quoting Ex Parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908).

six-year statute for actions brought against public officials under 42 U.S.C. § 1983. 42 Pa.C.S. § 5527. Since Plaintiff filed his action well within this statute, we will not dismiss on this ground.

### III. CONCLUSIONS

To summarize, we believe that Plaintiff should be allowed to proceed and attempt to prove most of his allegations. He may seek damages against the Defendants for conduct occurring within their individual capacities. He may further seek injunctive relief for conduct committed by the Defendants in their official capacities. However, all claims for damages caused by conduct within the Defendants' official capacities will be dismissed, as will Plaintiff's Count III, asserting a liberty interest deprivation. Additionally, Plaintiff's claim under Count II for a property interest deprivation by his transfer must be dismissed since he possessed no property interest in any particular district. The remainder of Defendants' motion to dismiss will, however, be denied.

An appropriate order will be entered.