Robert PEIFFER, Plaintiff,

v.

LEBANON SCHOOL
DISTRICT, Defendant.

Civ. A. No. 87–0918.

United States District Court,
M.D. Pennsylvania.

Nov. 9, 1987.

148

Marc G. Tarlow, William G. Baughman, York, Pa., Michael D. Fishbein, Levin & Fishbein, Philadelphia, Pa., for plaintiff.

Joel M. Ressler, Dist. Atty. Gen., Harrisburg, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### Introduction

Before the court is the plaintiff's motion for summary judgment as to liability in this action brought pursuant to 42 U.S.C. § 1983. The complaint alleges a violation of the plaintiff's fifth and fourteenth amendment rights. For the reasons that follow, the plaintiff's motion will be denied and summary judgment will be entered for the defendant.

### Background

The plaintiff was a maintenance employee of the Lebanon School District for seventeen years. On May 28, 1987, his employment at the Lebanon Junior High School was terminated by the Board of School Directors after a hearing held pursuant to section 514 of the Pennsylvania Public School Code, 24 P.S. § 5–514. The question of the propriety of the Board's refusal to continue that hearing gave rise to this lawsuit.

On April 22, 1987, Lebanon City Police Detective Russell Miller met with the plaintiff at the junior high school to discuss criminal allegations made against him by an eighth grade special education student. The plaintiff allegedly showed the student adult cards and magazines and touched the student's private parts. On the afternoon of April 22, 1987, the Superintendent of Schools summoned the plaintiff to his office to discuss the allegations. The plaintiff admitted that the student had been in the maintenance building, an area of school property not open to students, and that the student had viewed certain adult materials. The plaintiff stated that the student sat on his lap, but he denied any intimate contact. The Superintendent suspended the plaintiff with pay pending further investigation.

On April 24, 1987, the plaintiff was charged by the Lebanon City Police Department with indecent assault and corruption of a minor under sections 3126 and 6301 of the Pennsylvania Crimes Code, 18 Pa.C.S.A. §§ 3126, 6301. He pleaded not guilty.

On May 28, 1987, after notice to the plaintiff, the School Board held a hearing, pursuant to section 514, to determine whether dismissal was warranted. The notice indicated the Board's concern over the plaintiff's association with the student and listed the objectionable conduct as follows:

> This conduct includes, but is not limited to, the display of books, magazines, cards, and the like, your physical interaction with the student, and your allowing him to be in areas of school property in impermissible places and at impermissible times and circumstances.

At the commencement of the hearing, the plaintiff, through counsel, requested a continuance until resolution of the criminal matter. He informed the Board that his defense could be presented only through his testimony and that he did not wish to risk incriminating himself. The Board denied his request and the plaintiff and his counsel left the hearing. The Board heard testimony presented by the School District and voted unanimously to terminate the plaintiff's employment.

The plaintiff brought this action for damages and reinstatement alleging that the School District violated his fifth and fourteenth amendment rights to due process and against self incrimination. He has filed a motion for partial summary judgment on the issue of liability. He contends that since the conduct relied upon by the School District to dismiss him was the same as that underlying the criminal

charges, the School District violated his fifth and fourteenth amendment rights when it forced him either to waive his right against self-incrimination and testify, or to raise no defense at all. The School District maintains that the discharge had nothing to do with the criminal proceeding and that the plaintiff's rights were not violated.

On October 6, 1987, a jury found the plaintiff not guilty of both indecent assault and corruption of a minor.

*Discussion*

The court must evaluate the plaintiff's motion for summary judgment under the following, well established standard:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant.

*Hersh v. Allen Products Company, Inc.*, 789 F.2d 230, 232 (3d Cir.1986).

There are no genuine issues of fact material to the resolution of this summary judgment motion. Although the parties are at odds over the reasons for the plaintiff's discharge, that dispute is of no consequence. For the purpose of deciding this motion, the court will assume that, as the plaintiff contends, the alleged misconduct that gave rise to the criminal proceeding against him also formed the basis for his dismissal. Furthermore, the court will assume that the plaintiff had a sound legal ground for invoking his fifth amendment right against self-incrimination at the School Board hearing.

■ The plaintiff contends that the Board's failure to adjourn the hearing until after the criminal charges were resolved deprived him of due process and his right against self-incrimination. Clearly, the plaintiff's right against self-incrimination, was not violated directly. Had he testified, he would have done so voluntarily, in which case the fifth amendment would not apply. In fact, the plaintiff was permitted to and did remain silent. Thus the fifth amendment was successfully invoked.

Presumably, the plaintiff's claim is that the Board's action had a chilling effect on the exercise of his constitutional right. In essence, he asserts that the Board imposed upon him an impermissible choice between constitutional rights—his right to protect his job, and his right to remain silent in the face of criminal charges. He directs the court to *Portnoy v. Pennick*, 595 F.Supp. 1000 (M.D.Pa.1984), in which the court held that an employee may not be forced to choose between his job and a right guaranteed by the Constitution. Portnoy, an employee of the Pennsylvania Liquor Control Board, asserted his fifth amendment privilege before a Senate committee and declined to answer questions relating to his official duties. He was then suspended from employment. The court held:

> [A]n employee may properly be discharged or disciplined for refusal to answer pertinent questions concerning his official conduct. *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). However, such discharge is not allowed when the employee is forced to decide between his job and his right to refuse to answer questions which could subject him to legal sanctions. *Garrity v. New Jersey*, 385 U.S. 493, 495, 87 S.Ct. 616, 617, 17 L.Ed.2d 562 (1967). The state could not act as both employer and as prosecutor. *National Acceptance Co. Of America v. Bathalter*, 705 F.2d 924, 928 (7th Cir. 1983). Instead, the state/employer must "immunize" the employee; *i.e.*, not make the answers available for subsequent state criminal prosecution. Only then could the employer require the employee to disclose information, or subject the

employee to disciplinary action for refusal to answer. *Id.* *Portnoy* at 1003.

Portnoy was discharged because of his refusal to speak, and not because of independent conduct, as in the case at bar. That *Portnoy* is inapposite is clear from the plaintiff's affidavit in which he states that "the Board ... took testimony and determined to dismiss him ... *based upon the allegations of conduct* which were the same allegations providing the basis for the pending criminal proceedings against him." (emphasis supplied). Thus he was not terminated simply because he asserted his constitutional rights. Furthermore, there is no indication that the Board drew any adverse inferences from his refusal to speak, and the court concludes that the Board did not infringe the plaintiff's rights against self-incrimination.

■ We turn now to the plaintiff's due process argument. Though not clear from the plaintiff's brief, we construe his claim as alleging that because he invoked his right to remain silent, and the Board did not grant a continuance, he was not afforded a meaningful opportunity to be heard. Though it is not clear that a hearing was required in this case, the School Board conducted one pursuant to 24 P.S. § 5–514. For purposes of this motion, we will assume that the plaintiff's employment was a property interest that could not be taken from him without due process.

■ Although state law established the plaintiff's presumed property right, minimum due process standards are a matter of federal law. *Pedersen v. South Williamsport Area School District,* 677 F.2d 312 (3d Cir.1982), *cert. denied,* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). If a hearing is required, its timing and nature depends on an appropriate accommodation of competing interests, including the importance of the private concern, the finality of deprivation, and the likelihood of governmental error. *Id.* The criteria that determine the parameters of procedural due process were stated by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976):

[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors; first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The question before the court, then, is whether the May 28, 1987 School Board hearing satisfied these requirements.

The first consideration is that the private interest at stake, the right to employment is a substantial one. Without work, the plaintiff would not be able to earn a livelihood or fulfill the responsibilities and duties of a good citizen.

The risk of an erroneous discharge must be considered in the context of the procedures used at the hearing. The plaintiff was afforded numerous procedural rights, including advance notice and a hearing. It is undisputed that the plaintiff was provided with an opportunity to appear, with or without counsel, call witnesses in his own behalf and cross examine opposing witnesses. He contends, however, that he could not present an adequate defense because of his desire to remain silent in the face of the pending criminal charges. It does not follow from the plaintiff's election not to testify, and the School Board's decision to proceed with the hearing, that due process was violated. The plaintiff had the *opportunity* to testify.

■ In *Gabrilowitz v. Newman,* 582 F.2d 100, 104 (1st Cir.1978), a college student faced a choice similar to that of the plaintiff. The court stated, in the context of a college disciplinary hearing:

Appellee's testimony would be, therefore, entirely voluntary and subsequently admissible at the criminal case. Although the possibility of expulsion may make participation a wise choice, the

hearing procedures do not place appellee "between the rock and the whirlpool." *Garrity v. New Jersey, supra,* 385 U.S. at 498, 87 S.Ct. at 619. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case.

... Although the choice facing him is difficult, that does not make it unconstitutional.

There is nothing inherently repugnant to due process in requiring the plaintiff to choose between giving testimony at the discharge hearing, a course that may help the criminal prosecutors, and keeping silent, a course that may lead to the loss of employment. *See Arthurs v. Stern,* 560 F.2d 477 (1st Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).

The risk of error in the process employed was relatively slight. It goes almost without saying that even though the plaintiff wished to remain silent, he need not have left the hearing. He, alone or through counsel, could have played an active role by calling witnesses and cross-examining those called by the school district. That the plaintiff waived these rights is no reason to conclude that the risk of error was high.

Finally the court must consider the interests of the School District, including the fiscal burdens that would have accompanied postponing the hearing. Of paramount importance, of course, is the safety of the students. That consideration is not compelling in this case because the plaintiff had already been suspended and posed no threat to their safety. The School District has a significant interest in eliminating from its staff, those individuals who by conduct or reputation lower the image of the school in the public eye. Of equal importance is the financial burden of hiring temporary help while still maintaining the plaintiff on the payroll.

In sum, although the affected private interest is substantial, the risk of an erroneous deprivation is slight, and the burden of a delay would have been great. Upon balancing the competing interests, the court concludes that the procedure employed by the School Board comported with the requirements of due process. There is no reason to hold that the Board was constitutionally required to stay its proceedings until the criminal prosecution against the plaintiff was completed.

■ The plaintiff also has claimed a violation of his substantive due process rights. The essence of substantive due process is protection from arbitrary and unreasonable governmental action. The plaintiff has presented no evidence to support such a contention. In fact, the materials submitted by the plaintiff indicate that the School Board's action was anything but arbitrary or unreasonable. Both in his statement of material fact and his affidavit, he stated that after he and his counsel left the hearing, the Board took testimony and determined to dismiss him based upon allegations of conduct that were the same allegations providing the basis for the pending criminal proceeding. Furthermore, he stated that the formal action of the Board on June 8, 1987, was based upon the testimony received and the decision made at the May 28, 1987 hearing. The transcript of the hearing provided no basis to support a claimed violation of substantive due process, and in fact supports a contrary finding. There is no dispute over what transpired at the hearing, and the court finds that the Board's action was neither arbitrary nor unreasonable, and that the plaintiff's substantive due process claim lacks merit.

*Conclusion*

■ For the foregoing reasons the plaintiff's motion for summary judgment will be denied. Although there are no genuine issues of material fact, the plaintiff is not entitled to a judgment in his favor. The defendant, however, is so entitled. Where one party has invoked the power of the court to render a summary judgment

152

against an adversary, Fed.R.Civ.P. 54(c) and 56, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment. *Nebraska Health Care Ass'n Inc. v. Dunning*, 575 F.Supp. 176 (D.Neb.1983). The court finds that the defendant is entitled to a judgment in its favor as a matter of law. The undisputed facts, viewed as the plaintiff urges, fail to show a violation of the plaintiff's constitutional rights.